IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
12/30/2010

| | | |
|---|---|---|
| IN RE: | § | |
| ASPEN EXPLORATION INC | § | CASE NO: 08-50325 |
|     Debtor(s) | § | |
| | § | CHAPTER  7 |
| | § | |
| JANET NORTHRUP | § | |
|     Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 10-5005 |
| | § | |
| ASPEN EXPLORATION, INC. - WEST | § | |
| AUSTIN #1 JOINT VENTURE AND ITS | § | |
| PARTNERS, *et al* | § | |
|     Defendant(s) | § | |

## MEMORANDUM OPINION REGARDING SUMMARY JUDGMENT
## (DOC # 141)

    The Court has previously concluded that this and related bankruptcy cases were operated as Ponzi schemes resulting in severe financial injury to many investors. Involuntary bankruptcy petitions were filed against this Debtor, (among others) and now a chapter 7 Trustee is trying to sort out what property the Debtor owned and to litigate competing interests in the property.  This adversary proceeding involves certain mineral rights in Goliad County, Texas.  The public records show that leasehold interests were transferred to Debtor.  A number of individuals have attempted to promote their claims by asserting equitable title or otherwise to deny that the mineral rights and working interests belong to the Debtor.  In this adversary proceeding the chapter 7 Trustee attempts to determine the rights of the estate *vis a vis* the rights of those investors to ownership of the mineral rights and working interests.  For reasons set forth below, the Court concludes, as a matter of law, that Texas law vests ownership of the mineral rights and working interests in the Trustee *vis a vis* the Defendants in this adversary proceeding.  This decision reserves determination of whatever rights the investors may have as creditors of the bankruptcy estate or as creditors of other entities.  A separate final judgment has been issued.

### BACKGROUND

    A number of investors paid money to Debtor to acquire interests in joint ventures, or otherwise to participate in oil and gas exploration and production.[1]  Documentation of those interests could charitably be described as inadequate.  With respect to some properties, lawsuits had been filed pre-bankruptcy.  To assure due process, the Court required the Trustee to join all parties claiming interests in property in which the Trustee asserts an interest, even if the wannabe

---

[1] Debtor's mode of operation is the subject of this and adversary proceedings and contested matters.

investors attempted to purchase only joint venture interests which in turn intended to purchase mineral rights.

The chapter 7 Trustee filed this adversary proceeding against approximately 524 Defendants whom the Debtor's records indicated (or the Trustee could otherwise identify) as possibly claiming an interest in the Goliad County mineral interests and the working interests in the related wells. Approximately 450 of those Defendants failed to respond and a default judgment was entered. Another large number of Defendants filed stipulations with the Trustee stating that they had no documentation supporting a claim to ownership of the Goliad mineral rights and working interests involved in this lawsuit. Others filed answers of more or less specificity.

As noted, default judgment was rendered against about 450 defendants. On October 15, 2010, the chapter 7 Trustee filed a motion for summary judgment and for final comprehensive judgment against all other Defendants. Only two Defendants responded to that motion.

## UNDISPUTED FACTS

The Trustee has submitted competent summary judgment evidence of the following facts; there is no contrary evidence submitted in opposition to the Trustee's MSJ. Therefore, the Court concludes that there is no issue of material fact with respect to these issues and that these facts are established for purposes of this decision:

1. By written documents, timely and duly recorded, certain oil, gas, and mineral interests in Goliad County, Texas, were assigned to Aspen Exploration, Inc. ("Aspen").[2]

2. No other party has recorded documents that conflict with Aspen's recorded assignments. No other party has identified any written document purporting to transfer a real property interest that includes a property description identifying the same real property interests that were assigned to Aspen in the recorded document.

3. There is (or was) production relating to the assigned mineral interests, and the owner of the assigned rights is (or was) entitled to substantial payments.[3]

4. Prior to its adjudication as a debtor in bankruptcy, Aspen created Joint Ventures and solicited investors to purchase interests in those Joint Ventures; the offering memoranda described tax advantaged investments with potentially substantial returns while warning that those objectives might not be realized. Aspen was the promoter of the Joint Ventures, was responsible to obtain drilling prospects for the Joint Ventures, was responsible to develop the drilling prospects, and was

---

[2] Trustee's Motion for Summary Judgment ("Trustee's MSJ") docket # 141, Exhibits 1 and 2.
[3] Trustee's MSJ Exhibits 16 through 22

      designated as the entity to operate the joint venture and to divide the profits, if there were any.[4]

5. All recorded documents relating to relevant mineral interests indicate that Aspen is the owner of the interest. No documents were ever recorded that transfer any of the mineral interests to the JV's or joint venturers. That is, none of the Defendants have identified a recorded document that purports to transfer any mineral interest from Aspen to them.

6. The records of the operators of the wells producing from these mineral interests show Aspen as the owner of the interest. No documents were ever supplied to the operators showing the Joint Ventures or the joint venturers as owners of mineral interests or net revenue interests. That is, none of the Defendants in this adversary proceeding have identified a document that suggests that the well operators were advised of any right, by any Defendant, to revenue from the wells.

7. Aspen made promises that it did not keep.[5]

8. On November 17, 2008, an involuntary bankruptcy petition was filed against Aspen Exploration, Inc. An order for relief was entered on March 24, 2009. Janet S. Northrup was appointed chapter 7 Trustee on March 26, 2009. Subsequent to November 17, 2008, therefore, Aspen can be referred to as the "Debtor."

9. The chapter 7 Trustee has operated Debtor's business subsequent to her appointment.

THIS ADVERSARY PROCEEDING AND JURISDICTION OVER THE SUBJECT MATTER

      The public records indicate that the Chapter 7 Trustee owns the mineral rights in Goliad County. If so, the Trustee must collect the net revenue from the mineral production, the Trustee must liquidate the mineral interests, and the Trustee must divide the proceeds according to the priorities established by the Bankruptcy Code and state law.

      In this and in other related proceedings, some of the joint ventures or joint venturers asserted that Aspen defrauded them, breached fiduciary duties, and breached contracts for assignment of mineral interests to the joint ventures and to the joint venturers. The Trustee

---

[4] Trustee's MSJ Exhibits 10 through 15.

[5] *See* Memorandum Opinion, document # 169 in a related adversary 09-5009. That adversary proceeding involved Aspen and some of the same investors who are Defendants in this adversary proceeding. The final paragraph of that Memorandum Opinion, on page 7, reads "The Court has heard seemingly endless testimony in 3 related bankruptcy cases supporting allegations that members of the Rand family (who controlled Debtor [Aspen] and Wave Energy) engaged in Ponzi schemes to defraud investors related to oil well drilling activities and that criminal charges have been brought….But it is beyond the scope of these motions for summary judgment to decide whether Debtor, as joint venturer, breached fiduciary obligations to the joint venture (by failing to compel itself to "use its best efforts" to assure transfer of title) or whether Debtor simply defrauded the investors directly by selling them the blue sky."

brought this adversary proceeding to determine whether the mineral interests held in the Trustee's name on the public records is property of the estate or whether the claims of the joint ventures and the joint venturers trump the Trustee's rights and exclude the property from the bankruptcy estate.

This adversary proceeding is brought against a huge number of defendants to clarify the Trustee's duties and rights with respect to the mineral interests because of claims made by some of the joint venturers that they have rights that are enforceable against the Trustee, even though the rights are unrecorded. The Trustee has filed similar adversary proceedings against similarly-situated defendants related to property in other counties.

A.Jurisdiction Over the Subject Matter

This is an adversary proceeding, a civil proceeding, arising in a case under title 11 and arising under title 11 of the United States Code. The United States District Court has jurisdiction under 28 U.S.C. § 1334(b) and (e). By Order dated August 9, 1984, superseded by General Order 2005-6 on March 10, 2005, under authority granted by 28 U.S.C. § 157(a), the United States District Court for the Southern District of Texas referred all such proceedings to the bankruptcy judges for the district. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A), (E), (M), and (O). The bankruptcy judge may hear and may determine core proceedings, 28 U.S.C. 157(b)(1). No party has objected to the exercise of core jurisdiction by the undersigned bankruptcy judge.

B.Stipulations

A large number of Defendants have agreed with the Trustee that they do not own real property interests. The stipulations generally assert that the defendant owns a limited partnership interest, not a real property right in minerals. The stipulation does not by its terms preclude a claim against Debtor (bankruptcy estate) or any other entity for fraud or breach of contract.[6]

As to these Defendants, an unopposed judgment determining that these Defendants own no part of the mineral interest is appropriate.

C.Defaults and Protests

As in the other proceedings, the vast number of Defendants either failed to respond to the Trustee's complaint and summons or wrote protests against the Trustee's claims.[7]

1.Defaults

A default judgment was issued against the defaulting Defendants on August 31, 2010.[8]

---

[6] *See* for example, docket # 22 in this adversary proceeding.
[7] *See* for example, docket # 38 in this adversary proceeding.
[8] Docket # 118.

      2.      Protests

The "protests" do not constitute valid opposition to the complaint. While the specifics differ, the protests essentially contend that the defendant paid money to Debtor and that therefore they should own mineral interests -- the real property rights. The protests occasionally allege that Debtor recognized their real property rights by paying them money, which they characterize as returns on their investment. They contend that because Debtor paid them returns on their investment, their real property rights are confirmed, and therefore, they protest the Trustee's claim of ownership.

These protests clearly fail to address the law which requires documentation and recordation of ownership of real property rights. In addition, these parties failed to respond to the Trustee's motion for summary judgment. Because the Trustee has produced documentation of her record title to the mineral rights *vis a vis* these parties, and because these Defendants have failed to identify any material issue of fact for trial, summary judgment is appropriate as to these Defendants.

D.      Defendants Who Filed Answers But Did Not Respond to the Trustee's Motion for Summary Judgment

A number of Defendants filed answers that on the face of the document assert legal claims to the mineral rights, such as equitable title. But those Defendants failed to respond to the Trustee's motion for summary judgment.

Those Defendants have identified no evidence indicating that there is any material issue of fact for trial. Because the Trustee has provided recorded documentation of title, summary judgment is appropriate as to those parties.

E.      Jack Enloe

Mr. Enloe did not timely file an answer. Default judgment was not rendered against him.

Mr. Enloe was clearly aware of the proceeding, because he answered the Trustee's interrogatories and requests for admissions. Mr. Enloe was served with the Trustee's MSJ but did not respond to it with any summary judgment evidence suggesting a material issue of fact for trial. Mr. Enloe merely filed an answer about 6 weeks after the Trustee's MSJ. The Court has reviewed Mr. Enloe's answer and treats it as timely filed for purposes of this memorandum and order.

Because Mr. Enloe did not adequately respond to the Trustee's MSJ, summary judgment against him is proper.

F.      The Remaining Defendants, Messrs. Price and Wellde.

Messrs. Price and Wellde filed a response to the Trustee's MSJ that makes 3 procedural objections to the award of summary judgment and two substantive objections.[9]

      1.      Procedural Objections

           a.      "No Evidence" motion not applicable in federal court

The Court does not address this argument because the Court is applying the appropriate tests for default and for summary judgment as indicated above.

           b.      Texas requirement for burdens and procedures applicable to trespass-to-try-title

Texas public records reflect that the real property mineral interests at issue in this adversary proceeding belong to the Trustee. No party has identified any recorded document that suggests ownership in any other party, and no other party is in possession of those interests.

The issues in this lawsuit are: (i) whether the mineral interests constitute property of the bankruptcy estate thereby requiring the Trustee to administer and to liquidate that property, and (ii) whether the Trustee can avoid any unrecorded claim to the property under authority of Bankruptcy Code § 544.

These two issues are bankruptcy issues, not adjudication of title to property. Therefore, the Court concludes that Texas law applicable to trespass-to-try-title are inapplicable.

           c.      Trustee has failed to assert a valid claim for trespass-to-try-title

For reasons set forth immediately above, this argument is unavailing.

      2.      Substantive Opposition to the Trustee's MSJ

In two bullet points,[10] Messrs. Price and Wellde ("Price/Wellde") assert their principal opposition to the Trustee's MSJ. They assert that they have equitable title to some of the mineral interests and therefore the property is not property of the estate.

More specifically, in paragraphs 8 and 9 of the Price/Wellde Opposition to Trustee MSJ, they assert that they own a percentage of the Crews # 3 JV, a percentage of the Crews #4 JV, and direct working interests in the Crews #3 well and Crews #4 well.

---

[9] Document # 142, hereafter "Price/Wellde Opposition to Trustee's MSJ". *See* page two of that document, bullet points in paragraph 1.

[10] *Id.*

      a.     JV Interests

The argument with respect to the JV interest is simply irrelevant. An interest in a JV is not an interest in the assets owned by the JV. The allegation seems, at best, to be an attempt to assert a claim of the JV. Price/Wellde have no standing to do that.

      b.     Applicable law Related to the Argument of Direct Ownership of Working Interests

There is no dispute on the applicable law. The Trustee and Price/Wellde agree that

> To establish equitable title based upon a contract of sale, a party must demonstrate an agreement that satisfies the statute of frauds. To satisfy the statute of frauds, there must be a written agreement or written memoranda evidencing the essential terms of an agreement, including the identity of the contracting parties, the contract price, and a sufficient description of the property being conveyed. [Page 7 of Price/Wellde Opposition to Trustee's MSJ.]

3.     Summary Judgment Standard

Summary judgment should be granted "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(c); *Gray Law LLP v. Transcon. Ins. Co.*, 560 F.3d 361, 365 (5th Cir. 2009). Federal Rule of Bankruptcy Procedure 7056 incorporates Rule 56 in adversary proceedings.[11]

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine issue of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). A genuine issue of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) ("A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party."); *James v. Tex. Collin County*, 535 F.3d 365, 373 (5th Cir. 2008). A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009); *LeMaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007).

---

[11] Rule 56 was amended, effective December 1, 2007. Although most changes were stylistic, the changes to Rule 56(c) were substantive. Prior to the amendment, Rule 56(c) provided that the Court "shall" grant summary judgment if the relevant criteria were met. Effective December 1, 2007, the word "shall" was changed to "should". The Committee Notes to the 2007 amendment state that the word "[s]hould" was substituted for "shall" to recognize that, "although there is no discretion to enter summary judgment when there is a genuine issue as to any material fact, there is discretion to deny summary judgment when it appears that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56 advisory committee's notes (2007). As one commentator noted, "even when a motion for summary judgment is properly made and supported, it need not be granted . . . [s]uch a motion may be granted - indeed, it should be granted - but it does not have to be granted." Bradley S. Shannon, *Should Summary Judgment Be Granted?*, 58 Am. U. L. Rev. 85, 95 (2008).

Nevertheless, a court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F. 393, 405 (5th Cir. 2003). The Court should not weigh the evidence inasmuch as a credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara v. Garber*, 353 F.3d 393, 403 (5th Cir. 2003); *Chaplin v. Nationscredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine issue of material fact. *Sossamon*, 560 F.3d at 326; *U.S. v. 92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008). The non-moving party has a duty to respond with specific evidence demonstrating a disputed fact issue. *Celotex Corp. Cattrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *92,203.00 in United States Currency*, 537 F.3d at 507. When identifying specific evidence in the record, the non-movant must "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004); *Raga v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

If the movant does not bear the burden of proof, the movant must show the absence of sufficient evidence to support an essential element of the opposing party's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412; *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006). Movants who do not bear the ultimate burden of proof often seek summary judgment after discovery has produced insufficient evidence to support the non-moving party's claims. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex*, 477 U.S. at 324. The non-movant must "go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue" rather than relying on conclusory allegations. *Adams v. Travelrs Indem. Co.*, 465 F.3d 156, 163–64 (5th Cir. 2006); *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Ultimately, the motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

The Supreme Court's recent decision in *Ashcroft v. Iqbal* 129 S. Ct. 1937 (2009) is not directly applicable because it defines a pleading standard rather than a standard for decision for summary judgment motions. However, this Court interprets *Iqbal* to instruct the lower courts to use common sense and experience, to require "plausibility", and to reject "sheer possibility" as sufficient to require trial.

    4.    Trustee's Summary Judgment Evidence

As noted above, the Trustee has provided copies of recorded documents of partial transfer of the mineral interests to Trustee's name.

5.	Price/Wellde Summary Judgment Evidence

Price/Wellde rely on four categories of evidence to establish " … a written agreement or written memoranda evidencing the essential terms of an agreement, including the identity of the contracting parties, the contract price, and a sufficient description of the property being conveyed."

a.	Emails—Wellde/Price Exhibits B and C

Exhibit B is a series of 2 letters and about 7 emails that is the heart of the Price/ summary judgment evidence.

The 2 letters are dated June 23, 2008. Both are signed by Mark Rand, Greg Rand, and Thomas Price[12] on behalf of Aspen. The first 4 paragraphs of the letters address purchase of JV units which the Court has already determined to be irrelevant to this adversary proceeding. Paragraph 5 of the letter states:

> "Aspen has reserved 25% of our interest in the XTO projects for your account. Upon reviewing our ELAN Schlumberger logs and once production is established, you can exercise your right to purchase the interest."

This is clearly not a document intended to transfer ownership. It is an option, the option is conditional on establishment of production and on review of logs, the percentage that would be transferred is not specified, and there is no price stated.

The emails begin about a month after these letters and are, at best, sketchy. The most generous characterization of these emails is that they constitute negotiations to purchase property that is not clearly described.

The only sentence that seems to be definitive is in the final email dated August 26, 2008, timed at 9:56 PM EDT. It clearly says "You have a deal. Everything in your e mail seems accurate. Thx 2 both of u." But it is not clear what the deal is. The email seems to be a reply to 2 emails exchanged an hour earlier, one of which gives some vague information about "ownership in #4". But in any event, the earlier email makes the deal further conditional on "direct XTO connection as well a access to the XTO Partners on line page for inquiry, drilling reports and production information." There is no reference to well #3 and it is not completely clear that the email talks about the wells as opposed to the joint ventures. Even more confusing, later in the email there is a suggestion that perhaps Wellde/Price should not participate because they are getting too much discount relative to others. The Court concludes that these emails do not establish a material issue of fact for trial regarding whether they constitute a written agreement for the sale of real property that satisfies the statute of frauds.

---

[12] Mr. Price appears to be acting both for himself and for Debtor.

But even more compelling is Wellde/Price Exhibit C.  That series of emails makes it clear that no deal was concluded by the emails in Exhibit B.  There are about six emails in Exhibit C.  They begin August 27, the day after the emails in Exhibit B.  These emails refer to the condition that there was no deal until XTO recognized Wellde/Price and provided certain information.  Aspen and Rand give one excuse after another why the conditions are not satisfied and why it will take much longer than Wellde/Price expect.  Especially critical is an email dated February 25, 2009,[13] which indicates that the percentage interest in the wells have not yet been defined.

Perhaps most significant are the last two emails in Wellde/Price Exhibit C.  On March 9, 2010, at 11:26 AM[14] Price emailed David Clouston (attorney for Aspen) asking for documentation of the Wellde/Price purchase of working interests in the Crews #3 and #4.  About 4 hours later, Clouston replied that he had never seen any such documentation.  Specifically, Clouston says:  "… I don't have any documentation on your interest in the wells."  These two emails indicate that neither Wellde/Price nor Aspen's attorney had any documentation of Wellde/Price's interest in the wells.  Significantly, Price recognized that he had no documentation.

Exhibit C definitively establishes that Exhibit B does not constitute written documentation adequate to satisfy the statute of frauds.

      6.      Drilling Reports, Logs, Checks, Record of Payments, *etc*.

These documents are relevant to proving that a well existed, and might prove that Aspen defrauded Wellde/Price, but they do not constitute a written contract establishing equitable ownership of working interest in a well.

      7.      Conclusion Concerning Wellde/Price Equitable Ownership

Because the Trustee has provided summary judgment evidence of her ownership of leasehold interests and working interests in the related wells, and because the parties agree that without documentation Wellde/Price are not equitable owners of working interests in the wells, the Court concludes that mineral interests and working interests are property of the estate and that Messrs. Wellde and Price have no equitable rights to that property.

      8.      Property of the Estate

Bankruptcy Code § 541(a) (1) and (3) provide:

> **(a)** The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

---

[13] Page RB6000266.
[14] Page RB6000273.

> **(1)** Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case…
>
> **(3)** Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

The Trustee has provided proof of recorded title to the mineral interests at issue in this adversary proceeding. No party has identified any recorded document purporting to vest an ownership interest in any other party.

Bankruptcy Code § 541(d) provides:

> **(d)** Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

Wellde/Price and others have alleged that the Trustee holds mere legal title and not equitable title. Most Defendants have not responded to the Trustee's MSJ with any evidence of equitable title. Therefore, summary judgment is appropriate as to those Defendants. The Court has ruled that the summary judgment evidence provided by Wellde/Price is inadequate to suggest an issue of material fact for trial and that the summary judgment is appropriate determining that Wellde/Price do not hold equiteable title. Therefore summary judgment is appropriate in favor of the Trustee determining that the mineral interests and working interests are property of the estate.

9. Avoidance Rights

Bankruptcy Code § 544 provides that:

> **(a)** The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--
>
> **(1)** a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

> **(2)** a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
>
> **(3)** a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Bankruptcy Code § 550 allows a trustee to recover property under the authority of § 544.

Wellde/Price and other creditors have asserted that the Trustee cannot utilize her authority under §§ 544 and 550 because they allege that the Trustee holds only equitable title. The Court need not revisit that argument[15] because the Court has concluded that no party has demonstrated any evidence of equitable title to the property.

The summary judgment evidence establishes that the Trustee may avoid any interest that the Defendants have to the Goliad mineral interests. Defendants retain whatever rights they have to file proofs of claim for fraud or other rights to payment from the estate.

## CONCLUSION

The Court will issue a separate written final judgment.

SIGNED 12/30/2010.

_____
Wesley W. Steen
United States Bankruptcy Judge

---

[15] *See* related adversary proceeding 09-5009, document #169.